(72 App. Div. 281.)

### PEOPLE v. DIAMOND.

(Supreme Court, Appellate Division, Third Department. May 7, 1902.)

1. CRIMINAL LAW—MINUTES OF GRAND JURY—RIGHT TO EXAMINE.
   Leave to examine the minutes of the grand jury which indicted the defendant is not a matter of right, but of discretion in the court.

2. GRAND JURY—INDICTMENTS—PRELIMINARY EXAMINATION.
   Under Code Cr. Proc. §§ 252, 259, authorizing the grand jury to inquire into all crimes committed or triable in the county, and requiring members to declare crimes known to them, and making it their duty to investigate, that body is not limited to cases where preliminary examina-

tion has been held, and an indictment will not ·be dismissed because there was no such examination.

3. TRIAL—ORDER FOR STAY—RECORDING.

Where, while an indictment was in the general sessions, defendant applied to a justice of the supreme court and obtained a stay of all proceedings, but this was modified by another justice, so as to stay trial only, the stay, as modified, if effective at all, was operative from the time it was granted; and, on its presentation before it was recorded, it was not error to dispose of motions and a demurrer.

4. EVIDENCE—SUFFICIENCY—OFFICERS—FAILURE TO PERFORM DUTY.

Where a captain of police knew, as early as November, 1900, that a certain house was openly run and advertised as a house of prostitution, but made no arrests, and reported weekly that it was not such a house, and on March 14, 1901, in reply to a letter from the district attorney, stated that he could obtain no evidence of a violation of the law there, and it appeared that he had had conversations with the proprietor of the house, and kept officers posted near, and officers in citizens clothes visited the house, a conviction of willfully neglecting a duty enjoined on him by law was sustained.

5. SAME—COMPETENCY.

In a trial of a police captain for willfully neglecting a duty enjoined by law, in failing to suppress a house of prostitution, his weekly reports, stating, in effect, that it was not such a house, were properly admitted, being limited to the question of his willfullness in not suppressing the place.

Appeal from special term, Albany county.

Thomas J. Diamond was convicted of willfully omitting to perform .a duty enjoined on him as an officer, and appeals. Affirmed.

See 72 N. Y. Supp. 179.

The appellant was a captain of police in command of the Fifteenth precinct in the city of New York. The indictment upon which he was tried charges him with the violation of his duty as a public officer between October 1, 1900, and May 1, 1901, and the specification is that during all of that time one Lena Schmitt openly kept a house of prostitution at No. 27 Stuyvesant street, in said precinct, to the knowledge of defendant, and defendant willfully omitted to observe and inspect the said house, and to repress the same, .and willfully suffered the said house to be so openly and notoriously kept and maintained. The jury found a verdict of guilty.

Argued before PARKER, P. J., and SMITH, KELLOGG, ·CHASE, and FURSMAN, JJ.

Henry C. Henderson (J. Rider Cady, Frederick B. House, and Louis J. Vorhaus, of counsel), for appellant.

Zeb A. Dyer, Dist. Atty. (William Travers Jerome and Howard S. Gans, of counsel), for the People.

KELLOGG, J. The appellant presents several alleged grounds of error on this appeal, and, considering them in the order in which the errors are alleged to have occurred, we have:

1. A motion before the recorder in the city of New York for leave to inspect the minutes of the grand jury denied except upon filing a stipulation cutting the defendant off from some statutory rights. If the defendant had a right to inspect the grand-jury minutes, the condition imposed would have been a fatal error, but the inspection of such minutes is not a right which any indicted person possesses, and the leave to examine lies in the discretion of the court. Eighmy v. Peo-

ple, 79 N. Y. 560. We do not think discretion was here abused. The motion was subsequently renewed and heard upon its merits by Justice Herrick, and again denied. We see no error in this.

2. There was no preliminary examination in defendant's case before a magistrate, and defendant urges that the indictment for that reason should have been dismissed. I do not think this contention can be upheld. The grand jury is a court of original inquiry, and its powers and duties in this respect are stated in section 252 of the Code of Criminal Procedure. "The grand jury has power, and it is their duty, to inquire into all crimes committed or triable in the county, and to present them to the court." Section 259 requires a grand juror to declare any crime he has knowledge of, and the grand jury must thereupon investigate. Nowhere, by words or inference, is the scope of inquiry limited to cases where a preliminary examination has been had before a magistrate.

3. The demurrer to the indictment was overruled by the recorder. This was not error. The precise questions presented by this demurrer were passed upon in People v. Hirlihy, 66 App. Div. 534, 73 N. Y. Supp. 236, and a lucid and exhaustive opinion was then written. The decision of the appellate division was affirmed in the court of appeals on the opinion of the court below. 170 N. Y. ——, 63 N. E. 1120 (decided March 7, 1902). The indictment in that case was in all essential particulars like the indictment here.

4. While the indictment was in the general sessions, the defendant applied to a justice of the supreme court and obtained a stay of the trial and all proceedings, to continue until the decision of a motion to be made to transfer the case to the supreme court and to have the trial transferred to some county outside of New York. This stay was modified by the supreme court, held by another justice, and the stay, as modified, was of the trial only. This modified stay was presented to the recorder before the same had been entered of record, and, on its presentation, the recorder disposed of the motions and demurrer hereinbefore mentioned. The error alleged here is the disposition of such matters before the entry of the modified order. I do not think it necessary to determine whether a justice of the supreme court has power to interfere with proceedings in a case in the court of general sessions of New York before the case has been transferred to the supreme court. The stay, as modified, was operative from the moment it was made, if it was effective at all. Its subsequent entry related back to the time it was granted, and made lawful all proceedings in the meantime.

5. The contention of the learned counsel for the defendant "that the facts adduced in support of the indictment do not constitute a crime" we interpret to mean that the evidence is insufficient to support the verdict of the jury that defendant was guilty of willfully omitting to perform a duty imposed touching the repression of the house kept by Lena Schmitt, and this, of course, involves the question of whether the court erred in refusing to advise the jury to acquit and all questions touching the weight of the evidence. The two witnesses for the people, Lena Schmitt and Rosa Greenberg, testify to so many pertinent and material facts bearing upon the defendant's knowledge of the

character of the house, which, if untrue, might have been easily disproved by other witnesses, and was not, that the jury might well have given full credence to their testimony, though it was the testimony of admitted prostitutes. If their testimony needed corroboration, it was corroborated by these tacit admissions. It was further corroborated by all the other admitted surrounding facts and circumstances, and denied by none. There is nothing in the testimony, or lack of testimony, which admits of a reasonable doubt as to defendant's knowledge, as early as November, 1900, that this house was a notorious house of prostitution, and was openly advertised and run as such, and so continued to May 1, 1901, as charged in the indictment. That defendant willfully omitted to take the steps it was his duty to take to repress the maintenance of a house of prostitution here is abundantly shown. It is admitted that he did not make any arrest of Lena Schmitt, the proprietor, during the time stated. He did not disclose to any superior, or to any magistrate, or to the district attorney, any of the facts of which he was possessed. Instead of using the facts to repress the crime of maintaining a house of prostitution, he apparently repressed the facts. He kept them to himself, hoarded them, concealed them from all of the officials who had power to repress the crime, even if defendant had not. He did more; he weekly reported to his superiors that this house was not a house of prostitution, when he knew that it was. On February 25, 1901, a letter from the district attorney's office was referred to defendant. The letter notified him that the district attorney's office had been informed that this was a disorderly house. The defendant, by letter dated March 14, 1901, replied that "he could obtain no evidence of any violation of the law thereat." This, from the testimony, the jurors had a right to believe to be false, as they also had a right to believe the weekly reports to be false. This, upon the question as to whether the neglect or omission to perform his whole duty was willful, had an important bearing. Through his own inspection of the house, his conversations with the proprietor, Lena Schmitt, the officers he kept posted in front of the house day and night, the officers in citizens' clothes who so frequently visited the house, the defendant was presumably possessed of facts sufficient to prove the crime it was his duty to suppress. That portion of the law which made it his duty to "carefully observe and inspect" this house may have been performed. The facts collected by a faithful discharge of his duty could be used for either one of two purposes,—they could be used to repress the crime, or they could be used to hold the proprietor of the house in terrorem for tribute. The legitimate use is that contemplated by the law to suppress, but the testimony is wholly barren of any proof of any effectual attempt on the part of the defendant to so use it. The contention of the learned counsel for defendant that defendant's duty did not extend to the suppression of houses of prostitution in his precinct, because the maintenance of such a house is a crime under the Penal Code, and not enumerated as a crime in section 315 of the charter, is not tenable. The duty imposed by this section is to "enforce and prevent the violation of all laws in force in said city." This includes all the Penal Code laws, so far as they are applicable to the city of New York, both felonies

and misdemeanors. No argument is needed to support so plain a proposition. We are not impressed with the argument of the learned counsel that a modified effort to enforce the laws is sufficient in any case, or that police officers have any discretion in the premises. The crime of which Lena Schmitt was guilty was not a technical offense; it required no spying to discover it. It was flagrant, open, notorious, a public defiance of the police, and all the effective machinery for punishment at their command. Obviously, this was not a case for regulation, but a crime for suppression.

6. The exceptions to the rulings of the learned court taken at the trial, respecting the admission of evidence, present no reversible error. The single exception urged upon defendant's brief to a ruling of the court admitting in evidence the weekly reports of the defendant, stating, in effect, that No. 27 Stuyvesant street, kept by Lena Schmitt, was not a house of prostitution, had a direct bearing upon the question of the willfulness of the defendant in failing to discharge his duty, and was by the court limited to that purpose. The exception to the language used by the district attorney in summing up does not appear to present any fatal error. And, for all the reasons stated, the motions for a new trial and arrest of judgment were properly denied.

The judgment of conviction should be affirmed. All concur.