(161 App. Div. 221)

### PEOPLE v. SWEENEY et al.

(Supreme Court, Appellate Division, First Department. March 6, 1914.)

1. CRIMINAL LAW (§ 510*)—EVIDENCE OF ACCOMPLICES.
   The evidence of accomplices alone is sufficient to establish the fact that a crime has been committed.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1124–1126; Dec. Dig. § 510.*]

2. CRIMINAL LAW (§ 510*)—EVIDENCE OF ACCOMPLICE—CORROBORATION.
   The rule as to the corroboration of an accomplice's evidence does not apply to every part of his evidence.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1124–1126; Dec. Dig. § 510.*]

3. CRIMINAL LAW (§ 511*)—EVIDENCE OF ACCOMPLICES.
   It is not necessary that the evidence corroborating an accomplice's testimony shall of itself prove defendants' participation in the crime, nor need it be inconsistent with their innocence if it tends to connect them with the crime without the aid of the accomplice's testimony.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1128–1137; Dec. Dig. § 511.*]

4. CONSPIRACY (§ 47*)—CRIMINAL RESPONSIBILITY—SUFFICIENCY OF EVIDENCE.
   Evidence, aside from the testimony of accomplices, in a prosecution for conspiring to obstruct the administration of justice, held to sustain a conviction against defendant S.
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

5. CONSPIRACY (§ 47*)—CRIMINAL RESPONSIBILITY—SUFFICIENCY OF EVIDENCE.
   Evidence, in a prosecution for conspiring to obstruct the administration of justice, held to sustain a conviction as to defendant M.
   [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

6. CRIMINAL LAW (§ 59*)—"ACCOMPLICE."
   To be an "accomplice," one must be so connected with the crime that, at common law, he could himself be convicted as a principal or accessory before the fact.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71, 73, 74, 76–81; Dec. Dig. § 59.*
   For other definitions, see Words and Phrases, vol. 1, pp. 75–79; vol. 8, p. 7561.]

7. CRIMINAL LAW (§ 59*)—ACCOMPLICE—WHAT CONSTITUTES.
   To make one a principal or accessory before the fact, so that he can be an accomplice, he must have had an intention that his act should aid in the commission of the crime.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 71, 73, 74, 76–81; Dec. Dig. § 59.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. CRIMINAL LAW (§ 507*)—WHO ARE ACCOMPLICES.

One who acted merely as a messenger for defendants, who were conspiring to obstruct justice by preventing F., a witness, from testifying to certain matters, was not himself an accomplice so as to require his evidence to be corroborated, though he knew that it was hoped that F. would not testify, and that F.'s family would be taken care of in case his silence got him into trouble, in the absence of any knowledge of the conspiracy itself.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1082–1096; Dec. Dig. § 507.*]

9. CRIMINAL LAW (§ 627½*)—TRIAL—DISCRETION OF COURT—INSPECTION OF MINUTES OF GRAND JURY.

A motion for leave to inspect the minutes of the grand jury is addressed to the sound discretion of the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1431, 1434, 1435; Dec. Dig. § 627½.*]

10. INDICTMENT AND INFORMATION (§ 137*)—MOTION TO QUASH—GROUNDS.

A motion to quash the indictment on the ground that it was found solely upon the evidence of accomplices was properly denied, where that fact did not appear from the face of the indictment, though all of the witnesses indorsed thereon were afterwards shown to be accomplices.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 480–487; Dec. Dig. § 137.*]

Appeal from Trial Term, New York County.

Dennis Sweeney and others were convicted of conspiracy, and appeal. Affirmed as to defendants Sweeney, Murtha, and Thompson, and reversed as to defendant Hussey, and his discharge ordered.

See, also, 156 App. Div. 895, 141 N. Y. Supp. 303.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and HOTCHKISS, JJ.

A. S. Gilbert, of New York City, for appellant Murtha.
Alfred J. Talley, of New York City, for appellant Sweeney.
John B. Stanchfield, of New York City, for appellant Thompson.
Herbert C. Smyth, of New York City, for appellant Hussey.
Robert C. Taylor, of New York City, for the People.

SCOTT, J. The four appellants, who were, at the times mentioned in the indictment, inspectors in the police department of the city of New York, were jointly indicted and tried for the crime of having conspired to prevent and obstruct the due administration of justice. Penal Law (Consol. Laws, c. 40), § 580, subd. 6. The particular purpose of the conspiracy, as charged in the indictment, was the suppression of testimony which, if produced, would have tended to prove that the appellants, and other members of the police force, had been guilty of accepting bribes to influence their official action.

The city of New York is divided, for the purposes of police administration, into inspection districts, each of which is in charge and under the command of an inspector of police, and is further subdivided into precincts, each of which is commanded by and in charge of a captain of police, who is subordinate in authority to the inspector in charge of the inspection district, of which the precinct forms a part. The prosecution with regard to which it is charged that the appellants sought to suppress evidence arose out of testimony given by one George A. Sipp,

the keeper of a disorderly house, before a committee of the board of aldermen which was engaged in investigating police conditions in the city of New York. Sipp's testimony before the committee was to the effect that for a series of years he had been in the habit of making regular payments of "protection" money to a patrolman named Eugene Fox, attached to the Forty-Third police precinct, which was included within the Sixth inspection district. It was further proven upon the present trial that Fox paid over the money thus collected, less a percentage for collection, to Thomas W. Walsh, the captain of the precinct. Walsh testified on the present trial that he had been captain of the Forty-Third precinct from June, 1907, until late in the year 1912; that during that period the four defendants were successively the inspectors in command of the Sixth inspection district; that during all this period Eugene Fox, the patrolman above mentioned, had regularly collected tribute from the keepers of various disorderly and illegal resorts in the precinct, and that of the amounts so collected Fox kept sometimes 20 and sometimes 15 per cent., and turned the balance over to Walsh, who divided it, half and half, with whoever happened to be inspector in that district at the time. Fox corroborated him except as as to the division with the inspectors. The aldermanic investigation took place late in the year 1912, and it was on December 18th of that year that Sipp testified as to his payments to Fox. His evidence naturally created a great stir in the police department. It directly implicated only Fox, because Sipp had no personal knowledge of what disposition Fox made of the money which was paid him. It became therefore very important to those into whose hands the money had actually come that Fox should be prevented or dissuaded from telling what he had done with the money, and, in order to render it more easily possible to keep his mouth closed, it was desirable that Sipp should be prevented from testifying in any proceeding which might be instituted against Fox. Two such proceedings were promptly instituted, one before the police commissioner upon a charge of official misconduct, and one before a city magistrate upon a criminal charge of accepting a bribe. At the time these events were happening, Capt. Walsh was a very ill man, being confined for the most part to his house. The appellant Sweeney was the inspector then in charge of the inspection district. The latter became very active in taking steps to carry out the object sought to be attained by the alleged conspiracy, securing counsel to represent and advise Fox, and frequently consulting with Walsh with respect to raising the money, which it was considered would be necessary to induce Fox to remain silent, and to keep Sipp without the jurisdiction. In due course Sipp was subpœnaed to attend at the hearing, before the police commissioner, of the charge against Fox. He consulted a lawyer named Newell (who has since been disbarred), who advised him to leave the jurisdiction and go to New Jersey. This Sipp and his son, Howard, also subpœnaed, did. Newell put himself into communication with Rouss, the lawyer who had been retained by Fox, and obtained several hundred dollars, to be given to Sipp to compensate him for staying away. There is evidence which, if believed by the jury, as it apparently was, is quite sufficient to con-

nect Walsh, and at least some of the appellants, with the raising of this money, part of which was retained by Newell and part paid to Sipp. Later Sipp was apprehended in New Jersey upon a criminal charge, and brought back to New York. Soon after Fox and Walsh broke down, the former pleading guilty to the charge of bribery, and Walsh went before the grand jury and testified to his connection with the scheme of wholesale bribery, and as to the receipt of part of the money by the four defendants. The foregoing is but a brief outline of the history of the case given upon the trial. It is supported by the testimony of various persons, many of whom were themselves engaged in the conspiracy, but whose testimony was, notwithstanding, accepted and believed by the jury. None of the defendants testified in his own behalf, each relying upon the supposed weakness in the case of the prosecution.

It is not seriously contended by any defendant that no conspiracy existed such as is charged in the indictment, but each defendant insists that the evidence is insufficient to connect him with the crime, and that, in any case, the evidence against him is solely that of accomplices, and is therefore insufficient to warrant a conviction under section 399 of the Code of Criminal Procedure, which provides that:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

It rarely happens that a criminal conspiracy can be proven without the aid of some of the participants and accomplices, and the present case was no exception to the general rule. Of the witnesses relied upon by the prosecution the trial court charged, as matter of law, that Capt. Walsh, Eugene Fox, George and Howard Sipp, and the two lawyers, Newell and Rouss, were accomplices, and this instruction was clearly right. As to certain other witnesses, to whom reference will be made hereafter, the court properly left it to the jury to determine, as a question of fact, whether they were or were not accomplices.

Before proceeding to consider the evidence de hors that of accomplices, which is relied upon to connect each appellant with the crime charged, it will be well to recall certain well-established rules of law bearing upon the question of corroboration.

[1-3] In the first place, the evidence of accomplices alone, if believed by the jury, is sufficient to establish the fact that a crime has been committed. The rule as to corroboration of an accomplice does not attach to each and every part of the material evidence given by the accomplice. People v. Elliott, 155 App. Div. 486–496, 140 N. Y. Supp. 553. It is not necessary to elaborate this proposition further, because it is not denied in the present case that there had been a conspiracy for the unlawful purpose charged in the indictment. Just as it is not necessary that the corroborative evidence shall alone be sufficient to prove the fact of the crime, so also is it not necessary that it shall, standing by itself, prove absolutely the defendants' participation in the crime, nor need it be inconsistent with the defendants' innocence. People v. Elliott, 106 N. Y. 288, 12 N. E. 602. All that the statute requires, and all that is necessary, is that there shall be

evidence, other than that of accomplices, which *tends* to connect the defendant with the crime. If the evidence be of that character, the jury, and not the court, is to judge of the weight to be given to it. People v. O'Farrell, 175 N. Y. 323–326, 67 N. E. 588.

It will be most convenient to consider the case of each defendant separately.

[4] As to the defendant Sweeney. The evidence implicating him, if believed, was ample. In fact, so far as the testimony of the conceded accomplices went, he was by far the most active person concerned in promoting the conspiracy. Capt. Walsh, who was also deeply interested, and a considerable contributor to the fund that was raised, was ill and unable to be about, so that the active part of the work fell upon Sweeney, who frequently consulted and conspired with Walsh at the house of the latter. It was perhaps not unnatural that an inspector should visit one of his captains while the latter was ill, and such acts on his part were not inconsistent with innocence, but they also fitted in with the theory of guilt. Walsh's testimony respecting Sweeney's participation was corroborated in important particulars by Mrs. Walsh. It is claimed, in behalf of Sweeney, that Mrs. Walsh was also an accomplice, and consequently that her testimony adds nothing to the testimony of the other accomplices. The question whether or not she was an accomplice was left to the jury, and, as we think, rightly so. She undoubtedly knew that her husband and Sweeney were getting together a sum of money which was to be sent to Fox, but it is by no means clear that she knew that the money was to be used to suppress evidence. She may well have believed that it was to be used by Fox for his own defense. A nurse, whom nobody accuses of being an accomplice, also corroborated Walsh as to at least one of Sweeney's visits. There are circumstances shown here and there in the case which go far to connect Sweeney with the crime; the most significant being his activity in procuring affidavits upon which to fasten a disgraceful crime upon Sipp. The fact that such a charge was in preparation was communicated by Rouss to Newell, and by the latter to Sipp while he was a fugitive in New Jersey. It is not difficult to trace the preparation of this charge, which apparently lacked much foundation, to the desire to keep Sipp out of the state and out of the witness chair. The natural effect upon a man of Sipp's character of learning that such a charge was pending against him would be to lead him to avoid, if possible, any appearance as a witness. It is true that that charge was afterwards used as means to force Sipp's return to New York, but this was not done by Sweeney, or any of the other alleged conspirators. We think that there was sufficient evidence outside the testimony of accomplices to justify the jury in finding that Sweeney was a participant in the crime.

[5] As to the defendant Murtha. The evidence against this defendant consists of a statement made by him to the district attorney. It is related by a policeman named Thomas, assigned to serve as a detective for the district attorney. His evidence is uncontradicted. His statement was that he met Murtha, whom he knew well, and that the lat-

146 N.Y.S.—41

ter expressed a desire to see the district attorney, remarking that he "wanted immunity." Arrangements were made, and Thomas and Murtha went to the residence of the district attorney, and in the presence of Thomas, Murtha made a statement which, as it is claimed by the prosecution, proves Murtha's connection with the crime. The court left it to the jury to determine whether the conversation took place as testified to by Thomas, and, if so, what Murtha meant by his statement. The jury by their verdict have shown that they believed the statement to have been made, and considered that it sufficiently implicated Murtha in the crime. We see no reason to question their finding in this regard. Counsel for this defendant makes much of the fact that the court refused to leave it to the jury to say whether or not Murtha had made his statement under duress, or under some inducement on the part of the district attorney. The difficulty on this point is not only that there was no evidence to show or indicate that any threat or promise had been made, but counsel for Murtha affirmatively proved by the district attorney, whom he called as his own witness, that in fact there had been neither threat nor promise. On that question, therefore, there was no issue to submit to the jury.

[6] As to the defendant Thompson. He is abundantly connected with the crime by the testimony of Fox; but, as he was a conceded accomplice, corroboration was necessary to justify a conviction. Such corroboration is sought to be found in the evidence of one Nelson, who was a nephew of Fox's wife, and who was sent by Fox to find Thompson and bring back a message. He testified that he did so, and the message given him, if his evidence was credited by the jury, was quite sufficient to connect Thompson with the crime. Nelson's evidence is bitterly assailed by counsel for Thompson, but the credence to be given to it was wholly a matter for the jury, and we are not disposed to overrule their finding. A more serious question is whether or not Nelson was not also an accomplice. This question was left to the jury, and their verdict indicates that they did not consider that he was an accomplice. It is insisted, however, that the court should have ruled, as matter of law, that he was. The rule is that, to constitute an accomplice, one must be so connected with a crime that at common law he might himself have been convicted, either as the principal or as an accessory before the fact. People v. Zucker, 20 App. Div. 363–365, 46 N. Y. Supp. 766, affirmed on opinion below, 154 N. Y. 770, 49 N. E. 1102; People v. Bright, 203 N. Y. 78, 96 N. E. 362, Ann. Cas. 1913A, 771; People v. Elliott, 155 App. Div. 486, 140 N. Y. Supp. 553.

[7] "To warrant such a conviction, the one accused must have taken part in the perpetration of, or preparation for, the crime, with intent to assist in the crime. Every act which may have a tendency to assist in the perpetration of the crime is not, of absolute necessity, criminal. Before it will have that effect it must have been done with the *intention* on the part of the actor that it shall aid in the commission of the crime. Unless it appears without dispute that there was such intention, the person doing the act cannot be said to be a principal; and, if there is a question whether the act was done with such intent, that question must be submitted to the jury, and answered by them in the affirmative, before the actor can be held to be a principal, and consequently before he can be held to be an accomplice." People v. Zucker, supra.

[8] Tested by this rule we think that the jury was justified in finding that Nelson was not an accomplice. He was used merely as a messenger. What he learned from Thompson was undoubtedly enough to inform him that it was hoped that Fox would not testify, and that arrangements had been made, or would be made, to provide for his family if his silence led to his conviction, but mere knowledge of this sort did not make him a conspirator. In fact it does not appear that he knew that any conspiracy was on foot, or that any concerted effort was being made to keep Sipp out of the state. Given the existence of the conspiracy and Thompson's knowledge of it, the message he sent to Fox was sufficient to connect him with the crime, but the message, without knowledge of the conspiracy, did not establish the guilty intent on the part of Nelson which was requisite to put him in the accomplice class.

As to the defendant Hussey. There was no evidence to connect this defendant with the conspiracy, except that of conceded accomplices, mainly that of Newell, as to whom the court correctly charged that, as matter of law, he was an accomplice. Hussey's conviction was therefore unwarranted by the evidence.

[9, 10] All of the defendants also bring up for review two orders made before trial. One denied a motion for leave to inspect the minutes of the grand jury. This motion appealed to the sound discretion of the court, and was, we think, rightly denied. The second order denied a motion to quash the indictment on the ground that it had been found upon the evidence only of accomplices. The indictment had indorsed upon it, as the witnesses who had appeared before the grand jury, the names of Walsh, Fox, George A. Sipp, and Newell. The motion to quash was made on affidavits by the defendants stating generally that all of these four witnesses were accomplices. Again we think that the motion was properly denied. It did not appear on the face of the indictment that all of these witnesses were accomplices, and the court was not bound to accept the bare allegation of the defendants, unsupported by the statement of any facts from which the court itself could form a judgment whether or not all the witnesses were accomplices. It is true that the evidence upon the trial showed that they were, but the court, when it decided the motion to quash, had no means of knowing what the evidence on the trial would be, and its action in denying the motion to quash must be judged by the information it then had, and not by what may have afterwards been disclosed.

It results that the judgment appealed from must be affirmed as to the defendants Dennis Sweeney, John J. Murtha, and James F. Thompson, and that it be reversed as to the defendant James E. Hussey, and that he be discharged. All concur.