THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. WILLIAM HOWELL, Appellant.

First Department, January 22, 1957.

154

*Jacob W. Friedman* of counsel (*Irving Greenberg* with him on the brief; *James D. C. Murray*, attorney), for appellant.

*Walter E. Dillon* of counsel (*Daniel V. Sullivan*, District *Attorney*, Bronx County), for respondent.

BREITEL, J. P. Defendant Howell has been convicted, after a jury trial, of murder in the second degree, and sentenced for a term of not less than 40 years, nor more than his natural life.

He appeals from the conviction and urges, among others, two principal grounds for reversal and dismissal of the indictment.

The first ground urged for reversal is that the verdict upon the trial was against the weight of the credible evidence. There is no claim of insufficiency of proof. The second ground urged is that the indictment must be dismissed, because it clearly appears that there was an insufficiency of evidence before the Grand Jury which returned the indictment.

The conviction should be affirmed.

The court is unanimous in finding that the verdict returned in this case, finding the defendant guilty of murder in the second degree, is amply supported by the trial evidence. With regard to the testimony of the witness Sanders, who was awaiting sentence on his third felony conviction, the question raised for the jury was primarily that of credibility. All of the elements that should have been weighed by the jury were presented to it, especially under the astute cross-examination of able and experienced counsel. Moreover, the jury received a proper charge by the trial court on the factors to be considered.

Disagreement, however, exists among the court with respect to whether, and with what effect, the Grand Jury minutes should be considered in disposing of a motion to dismiss the indictment on the ground of evidentiary insufficiency before the Grand Jury, which motion is also before us.

It is the majority's view that, unless defendant, at this stage of the proceedings, can establish, from whatever source, by clear and satisfactory evidence, first raised by motion made before judgment, that there was an insufficiency of proof before the Grand Jury, the indictment is presumed valid and regular. (*People* v. *Nitzberg,* 289 N. Y. 523; *People* v. *Sweeney,* 213 N. Y. 37; *People* v. *Glen,* 173 N. Y. 395; *People* v. *Sexton,* 187 N. Y. 495; *People* v. *Van Allen,* 275 App. Div. 181.) Moreover, it is noted that a motion to inspect Grand Jury minutes, as distinguished from the principal motion to dismiss the indictment for evidentiary insufficiency, is not appealable. (*Matter of Montgomery,* 126 App. Div. 72, appeal dismissed 193 N. Y. 659; *People* v. *Strauss,* 165 App. Div. 58; *People* v. *Harrell,* 282 App. Div. 1051; see Code Crim Pro., §§ 485, 517.)

In holding that a motion to inspect is not appealable, it is not decided that Grand Jury minutes may not be examined on a motion to dismiss the indictment. The motion to inspect is to provide counsel with the inspection. The two motions, although frequently coupled, are not to be confused with one another. The motion to dismiss for evidentiary insufficiency raises a question for the court, in which event it should examine

the minutes, but only if defendant supplies extrinsic proof that there is evidentiary insufficiency. This is the rule, as laid down in the *Nitzberg, Sexton, Glen* and *Sweeney* cases (*supra*); although, in fact, in none of these cases did the court actually examine the Grand Jury minutes.

It is necessary, now, to turn to the evidence received upon the trial. That evidence serves, in this case, two purposes. One is relevant to sustaining the verdict. The other relates to the extent of the proof to show evidentiary insufficiency before the Grand Jury.

The undisputed proof is that on August 28, 1953, one Ryan, in the afternoon of that day, entered the apartment house in which the victim resided. The victim, Lewis, president of his union, had come home from his union office and had just reached his apartment door. Ryan entered the apartment house, his face covered by hand and handkerchief, and, although there was an elevator available, took the stairway to the fifth floor. Minutes after he entered, the firing of several shots was heard. Ryan was then seen running out of the apartment house with his face again covered. He was pursued by the doorman, who had previously observed him entering and leaving the apartment house, and the pursuit was picked up by a uniformed patrolman in the neighborhood. The policeman and Ryan exchanged shots. Ryan then approached a maroon Ford automobile which belonged to the wife of defendant Howell. He had a brief conversation with the driver, and then the automobile drove off as the policeman and Ryan continued their shooting duel. The duel ended in Ryan's death on the street. Near him was found a .45-caliber automatic pistol, with three unexpended cartridges in the magazine. In his pocket was found a brown paper bag containing an empty clip for the pistol and nine unexpended cartridges.

The victim, Lewis, was shot five times. At least one of the bullets made its entrance from the back and its exit from the front. Two of the shots were sufficient to prove fatal, and near the body of the deceased victim were found seven discharged shells. The shells were .45-caliber automatic pistol cartridges, and had been fired from Ryan's pistol.

On the foregoing proof, a clear case of premeditated and deliberate murder in the first degree, by Ryan, was established. The nature of the weapon used, the nature of the wounds sustained, and the immediate circumstances preceding and following the commission of the crime established the nature and degree of the crime. (*People* v. *Harris,* 209 N. Y. 70; *Thomas* v. *People,* 67 N. Y. 218; *People* v. *Weiss,* 290 N. Y. 160, 162–163.)

We now turn to the principal proof connecting defendant Howell with Ryan in the commission of the crime. It is conceded that Ryan and Howell were acquainted with one another. Both, incidentally, had criminal records. On the two nights preceding the killing, and in the preceding night extending into the early hours of the morning, the two men were in one another's company. There was also evidence of Howell's association with the union and various figures in the union. A witness placed the gunman, Ryan, in the Howell automobile, the maroon Ford, in the company of Howell the day preceding the killing. When Ryan fled from the apartment house, after the shooting of the deceased, he was seen to run to the Howell Ford, which was moving slowly down Jerome Avenue, the next street, separated by a park, from Creston Avenue on which the victim's apartment house was located.* Ryan ran through the park, stopped the car, opened the door, and spoke with the driver. The policeman identified the driver as the defendant Howell. As the shooting resumed, Howell drove off, alone, in the automobile. The automobile was later found abandoned in Manhattan with a bullet-crease dent in one of its fenders. Howell, concededly, stayed in hiding, away from his home, and away from his family, until he surrendered voluntarily on September 13.

When Howell was taken into custody, he denied that he had been in The Bronx on the day of the killing, and he denied that he had been in possession of the automobile on that day. He claimed that he had lent the automobile to Ryan. If the People's witnesses are credited, these pretrial statements were false.

Upon the trial, Howell testified in contradiction of several People's witnesses, including his workmen's compensation physician, that he had not been in The Bronx, or in New York, for the *two weeks preceding* the killing. If the People's witnesses are credited, this trial testimony was false.

The presence of defendant Howell in the automobile near the scene of the crime, his flight alone when he saw that Ryan was being pursued by the policeman, his status as a fugitive for over two weeks and his statements upon being taken into custody, and upon the trial, if believed to be false, constituted strong evidence in the circumstances of this case that Howell was an

---

* Had the Ford awaited the gunman in front of the house where the shooting occurred, apart from possibly attracting attention, a speedy getaway would have been frustrated by the fact that it was a one-way street ending a half-block away at the park, and with a one-way right turn leading into the congested traffic of the Fordham Road area — almost a cul-de-sac.

accomplice of Ryan in the commission of the premeditated crime, for which purpose Ryan had gone to the deceased's apartment house.

While it has been repeatedly said that flight from the scene of a crime, continuing fugitive status, and even false statements may have no precise weight or value assigned (*People* v. *Leyra*, 1 N Y 2d 199, 208–210), nevertheless, when considered together with all the circumstances of the case there may arise a higher degree of guilt indication. (*People* v. *Ogle*, 104 N. Y. 511; *People* v. *Willett*, 213 N. Y. 368, 386–387; *People* v. *Meehan*, 256 App. Div. 268.)

True it is that the flight, continuing fugitive status, and even false statements may be explained away. But, when instead of explanation, false denial of the events, referring to denial of presence at, and flight from, the scene of the crime, there is no innocent explanation at all.

The foregoing was not all the proof offered by the prosecution upon the trial. In addition, there was the testimony of Sanders, a thrice-convicted felon, awaiting sentence for his most recent robbery. He and Howell had known one another since 1945. He had also known Lawrence Lynch, one of the figures in the union of which the deceased victim was the president, and with whom Howell was acquainted. After Howell's surrender and his detention in prison, they met there. These old acquaintances engaged in conversation. Sanders asked Howell why he had surrendered. Howell proceeded to tell Sanders, according to Sanders, that he believed the prosecution had no case and that his situation would be worsened, if he remained a fugitive. He told of the plan to kill Lewis in connection with the situation in his union, and even of the attempted clearance of the plan with their mutual acquaintance, Joe Fay, in Sing Sing Prison. He then began to blame his difficulties on the gunman, Ryan, because Ryan, instead of walking to the automobile so as not to cause any attraction, had run toward the automobile. He explained that he had not used a stolen car because he, Howell, had to '' hang around the house, Lewis' house for a few days trying to catch Lewis, and if I used a stolen car, I might have been picked up ''. He said that they had to keep the gun in the car and a stolen car would make the situation unsafe. He explained how he had waited for Ryan and that he had not left until he saw Ryan get shot and fall down. He described later events while he was a fugitive. These conversations were repeated and developed during the ensuing days that the two men met in the jail.

The foregoing testimony, if believed, provided complete confession.* The jury, by its verdict, believed that testimony. It had available to it all the information concerning the criminal background of Sanders and the fact that he was in a position and expected to gain from the authorities, if he co-operated. On the consideration to be given these circumstances, the jury was properly charged by the trial court.

Consequently, the case upon which the verdict in this case rests is sufficient.

It now becomes necessary to consider the second ground for reversal and dismissal of the indictment as urged by defendant Howell. This ground rests upon the claim that it clearly appears that the indictment returned by the Grand Jury was not supported by sufficient evidence. The critical fact in support of this contention is that the fellow prisoner, Sanders, concededly, did not testify before the Grand Jury which returned the indictment. Before the trial, on September 30, 1953, defendant Howell made the usual combination motion, on affidavit, for an inspection of the Grand Jury minutes and to dismiss the indictment for insufficiency of evidence before the Grand Jury.

The affidavit on the motion to inspect, made by Howell's attorney, asserted that the press reports indicated to him that the prosecution could not have had any evidence as to the circumstances under which Ryan killed Lewis. He argued that in the absence of such circumstances it could not be determined whether Ryan had committed any crime, and if he had, what crime, and if for homicide, in what degree, so as to implicate Howell. It was argued that the evidence of flight was insufficient in the absence of other proof to supply the omission. That motion was denied.

The motion was renewed, however, upon the trial, or at least that part which requested dismissal of the indictment, before the prosecution had rested. At this time, it was argued that the only evidence which the Grand Jury could have had, at the time it returned the indictment, was that of the witnesses who had placed Howell near the scene of the crime, that he had fled

---

* There are discrepancies between Howell's alleged narration of the crime to Sanders, and the events as they are known from the lips of the other witnesses, including police, in the case. If anything, this suggests the truth of Sanders' testimony; for, if his testimony had been suggested to him, the usual exact conformance might be expected. Moreover, the discrepancies could arise from the fact that Howell might have wished to place a better face on his conduct in leaving Ryan to be shot down by the policeman. For example, Howell, according to Sanders, said that Ryan never got nearer to the Ford than a half-block away, although the eye-witness testimony is that he reached the Ford, opened the door, and spoke with the driver, Howell.

from that scene, and that, without the testimony of Sanders, there was nothing to connect Howell with Ryan in the commission of a murder, or even of a felony. It should be noted at this time that the Grand Jury had returned an indictment for murder in the first degree, although the verdict upon the trial was for the lesser crime of murder in the second degree.

It becomes appropriate then, at this point, to consider the alleged proof of insufficiency of evidence before the Grand Jury. The affidavit on the motion made before trial obviously does not approach establishing such insufficiency. There is speculation based upon newspaper reports as to what witnesses and what testimony was available to the prosecution. There is nothing to indicate who the witnesses actually were, or to what they testified.

When the motion was renewed upon the trial, the proof was somewhat better, but still fell short of the test that it must clearly appear that the proof was insufficient. Based upon the fact that Sanders, the fellow prisoner, did not testify, defendant Howell infers that the only testimony available before the Grand Jury was that of the witnesses who testified at the trial, other than Sanders. Assuming that to be true, the evidence was sufficient, although, of course, not as strong as upon the trial.

There was evidence of the premeditated killing of Lewis by Ryan. There was evidence of Howell's association with Ryan and the meeting with Ryan two days before the killing. There was evidence that Howell was in the automobile in the neighborhood of the scene of the crime, to which Ryan directly fled when he ran from the deceased's apartment house across the park to Jerome Avenue. There was evidence that Howell's car, with Howell driving it, was moving slowly and had just come to a double-park when Ryan approached his car. There was evidence that, when the shooting duel resumed, Howell fled, alone, with the automobile, later abandoning the automobile in Manhattan, and became a fugitive for over two weeks.

It is the evidence that when Howell surrendered, he made false assertions as to his whereabouts on the day of the crime, his presence in the automobile at the scene of the crime, and that he had lent the automobile to the gunman Ryan. This evidence, if unexplained or uncontradicted, pointed the finger of guilt at Howell. And that finger of guilt refers to guilt of a crime. In this case the only relevant crime is that of the premeditated killing perpetrated by the gunman, Ryan. Surely, then, it was reasonable for the Grand Jury to infer that Howell was waiting in the maroon Ford with the purpose of providing a quick get-away. While it is true that innocent explanation of his

conduct, such as fear and confusion, if believed, might dissipate or rebut the inference to be drawn from flight, fugitive status and false assertions upon apprehension — this is the stuff which goes before a trial jury to explain or contradict the evidence which otherwise warrants a Grand Jury to charge one with crime.*

Hence, in this case, there was sufficient evidence before the Grand Jury to sustain the indictment, even if we assume, as is concededly true, and as argued by defendant, that the testimony of Sanders was not available to the Grand Jury. It follows that defendant has not sustained the burden of showing evidentiary insufficiency before the Grand Jury, but indeed the contrary appears. In that posture, we are not required to, nor should we, go beyond the immediate record for the purpose

---

* In the context of this case it is not necessary, therefore, to consider whether the degree of proof before a Grand Jury, as distinguished from proof of the several elements of the crime, must be the same as before a trial jury. But a caution is certainly suggested. A trial jury in a criminal case must be satisfied by the evidence beyond a reasonable doubt. A Grand Jury in order to return an indictment must have before it sufficient evidence to warrant a conviction, if not explained or uncontradicted. (*People* v. *Bob,* 233 App. Div. 94.) Obviously the test of nonexplanation or noncontradiction is not one that is submitted to a petit jury, even when the defendant rests on the People's case. There is a much higher standard required before the trial jury, presumably, even on motion made at the close of the prosecution. Thus, for example, testimony of a degraded, uncertain or confused person, containing, nevertheless, the elements of a crime, might sustain an indictment, on motion, where it would not meet the test, if that were all that were offered, to justify a trial verdict of guilty beyond a reasonable doubt. Would a court dismiss an indictment obtained on the testimony of an eight-year child concerning a sex crime committed on her, absent corroborative evidence of the identity of the offender? Hardly. (See *People* v. *Ortiz,* 180 Misc. 879; *People* v. *Peary,* 249 App. Div. 851; *People* v. *Sexton,* 187 N. Y. 495, 513, *supra.*) That the test applicable to circumstantial evidence should be applied differently with respect to Grand Jury evidence, see dissenting opinion by BERGAN and HALPERN, JJ., in *People* v. *Leary* (280 App. Div. 679, 686, revd. 305 N. Y. 793).

On any view, however, whether evidence before a Grand Jury warrants a conviction, given some evidence of each of the elements of the crime, sometimes referred to as a *prima facie* case, it is now quite clear that such determination is one to be made exclusively by the Grand Jury. So, in *People* v. *Eckert* (2 N Y 2d 126, 129) the Court of Appeals said: "In this instance that determination was for the Grand Jury in its capacity as arbiter of credibility and of the weight to be given to the evidence (*People* v. *Vaccarella,* 257 App. Div. 461; *People* v. *Bob,* 233 App. Div. 94). That a trial jury might not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence to the *judgment* of the Grand Jury (Code Crim. Pro., § 251)." The earlier discussion in the case referred, undoubtedly, to the standard of proof for circumstantial evidence before a trial jury in order to sustain a verdict, and thereby, the indictment.

of evaluating the sufficiency of the proof before the Grand Jury. Although we have viewed the minutes, their contents are regarded as immaterial, for the reasons stated earlier. If they were material, we would hold them sufficient to sustain the indictment (see n., p. 161, *supra*). In any event, the indictment, presumed valid under the authorities cited earlier, in the absence of clear proof to the contrary, has served its function in bringing the defendant to trial. The verdict, sustained by sufficient proof, is tested now by that proof and the fairness of the trial.

The judgment of conviction should be affirmed.

BOTEIN, J. (concurring in result). I believe that defendant has made a sufficiently satisfactory showing of the likelihood that the proof before the Grand Jury was insufficient to require this court to read the Grand Jury minutes. To demand any clearer showing would virtually require the defendant, from extrinsic sources and without access to the minutes, not only to present a reconstruction of the evidence before the Grand Jury, but to secure a certification of its faithfulness from the District Attorney. Except in a bizarre situation, such as was presented in *People* v. *Nitzberg* (289 N. Y. 523) this is manifestly impossible. The majority of the court, being of the opinion that defendant has not made a showing that would justify appellate review of the denial of his motion to dismiss the indictment on the ground of insufficiency of the evidence submitted to the Grand Jury, has held the court is not even required to read the Grand Jury minutes. It is my belief that not only should the court read the Grand Jury minutes, but that upon such reading it must proceed to determine whether or not the evidence was sufficient to sustain the indictment.

Upon a reading of the minutes, however, I believe that the proof submitted to the Grand Jury was sufficient to sustain the indictment.

Accordingly, I concur in the majority vote affirming the judgment of conviction.

VALENTE, J. (dissenting). The provocative question here presented is whether a defendant is without any practical remedy in the situation where he is indicted upon clearly insufficient evidence, is denied an inspection of the minutes of the Grand Jury that returned the indictment and is thereafter convicted upon the strength of evidence obtained by the People subsequent to the indictment.

Indicted for the crime of murder in the first degree, defendant Howell was charged with having been an accomplice of, and having acted in concert with, one Ryan in the premeditated and deliberate murder of a certain Lewis, a labor union official, outside the door of the latter's apartment in The Bronx. Ryan himself had been shot and killed on the street by a policeman while attempting to flee from the scene of the crime.

The principal evidence against Howell at the trial consisted of admissions allegedly made by him during his detention in prison *following the finding of the indictment* to a fellow prisoner named Sanders, a thrice-convicted criminal. Apart from Sanders' testimony—which was obviously not available to the Grand Jury—the People's case against Howell was predicated exclusively on certain circumstantial evidence which, defendant has contended, was legally insufficient of itself to warrant conviction.

In advance of trial defendant made a motion, which was denied, for an inspection of the Grand Jury minutes and for a dismissal of the indictment on the basis of the insufficiency of the evidence before the Grand Jury. That motion was thereafter renewed at the trial upon the additional stated ground that the Grand Jury could not possibly have had Sanders' testimony before it and that, absent his testimony, the only other evidence on which the indictment could have been predicated was clearly insufficient to warrant either indictment or conviction. The motion was again denied, and the trial resulted in a judgment convicting defendant of the crime of murder in the second degree. Appealing from the judgment of conviction, defendant also seeks to bring up for review the denial of his motions for inspection and dismissal.

The right of the defendant to secure review — in conjunction with an appeal from the judgment of conviction — of an order denying his motion to dismiss the indictment on the ground that it was based on insufficient evidence, is firmly established by the decisions. (*People* v. *Glen,* 173 N. Y. 395; *People ex rel. Hummel* v. *Trial Term,* 184 N. Y. 30; *People* v. *Sexton,* 187 N. Y. 495; *People* v. *Nitzberg,* 289 N. Y. 523.)

It is urged, however, that an order denying a motion made in advance of trial for an inspection of the Grand Jury minutes is not similarly reviewable. While no separate appeal lies from such an order (*Matter of Montgomery,* 126 App. Div. 72, appeal dismissed 193 N. Y. 659; *People* v. *Strauss,* 165 App. Div. 58), it is reviewable on an appeal from the judgment of conviction.

(*People* v. *Sweeney,* 161 App. Div. 221, 229, affd. 213 N. Y. 37, 42; *People* v. *Diamond,* 72 App. Div. 281, 282, affd. 175 N. Y. 517; *People* v. *Siegel,* 282 App. Div. 747, 748; cf. *People* v. *Zerillo,* 140 App. Div. 902, appeal dismissed 200 N. Y. 443.) The considerations which have led the courts to uphold the reviewability, on appeal from the judgment of conviction, of an order denying a motion to dismiss the indictment as founded on insufficient evidence — even though the right of review is not expressly granted by the Code of Criminal Procedure (§§ 485, 517; see *People* v. *Sexton,* 187 N. Y. 495, 512, *supra*; *People ex rel. Hummel* v. *Trial Term,* 184 N. Y. 30, 33, *supra*) — are equally applicable to a review of a denial of a motion for inspection of the Grand Jury minutes in aid of such a motion to dismiss. In any event, since the motion here involved was renewed at the trial, the denial thereof became part of the minutes of the trial and was therefore clearly reviewable. (See *People ex rel. Hummel* v. *Trial Term, supra,* p. 33.)

The question remains whether the denial of a motion for inspection rests to such an extent in the discretion of the court below that an appellate court is foreclosed from interfering therewith. The Court of Appeals has held that because of the limitations on its jurisdiction *it* has no power to review a discretionary denial of a motion for inspection of the Grand Jury minutes. (*People* v. *Sweeney,* 213 N. Y. 37, 42, *supra*; *Eighmy* v. *People,* 79 N. Y. 546, 560.) This court's jurisdiction is not, however, so limited (cf. Code Crim. Pro., § 527; *People* v. *Boas,* 92 N. Y. 560, 563–564), and this court, as well as the Appellate Divisions of other departments, has freely exercised the power to review the trial court's exercise of discretion in denying a motion for inspection of Grand Jury minutes. (*People* v. *Sweeney,* 161 App. Div. 221, 229, *supra*; *People* v. *Diamond,* 72 App. Div. 281, 282, *supra*; *People* v. *Siegel,* 282 App. Div. 747, 748, *supra*.)

It is further urged, however, that defendant Howell failed to make a sufficient showing in the court below to justify either the granting of an inspection to the defendant or to warrant an inspection by the court itself, since, it is claimed, he did not clearly establish, by independent evidence, that the proof before the Grand Jury was insufficient. There is a presumption that " an indictment is based upon legal and sufficient evidence until there is satisfactory proof to the contrary " (*People* v. *Glen,* 173 N. Y. 395, 403, *supra*), and a motion to dismiss an indictment on the basis of the insufficiency of the evidence before the Grand Jury will, of course, be granted only upon the clearest showing to that effect. (Cf. *People* v. *Glen, supra; People* v.

*Sexton, supra; People* v. *Sweeney, supra.*) The same standard of proof, however, does not prevail on a motion for inspection of the Grand Jury minutes.

If the defendant had available to him independent conclusive proof establishing the insufficiency of the evidence before the Grand Jury, it would be entirely unnecessary for him to obtain an inspection of the Grand Jury minutes. The inspection is granted for the very reason that it is shown to be " necessary to the defendant to enable him to make and sustain a motion to dismiss the indictment ". (See *Matter of Montgomery,* 126 App. Div. 72, 83, *supra.*) Compare *People* v. *Decina* (2 N Y 2d 133, 145) where the Court of Appeals pointed out that it could not " rule on the legal sufficiency of evidence before the Grand Jury without knowing what that evidence is ", and that the defendant " should have taken appropriate steps below and made a record so as to be in a position properly to raise the question on appeal."

On the other hand, a motion for inspection is not granted as of course or as a matter of right, but is addressed to the sound discretion of the court. Some showing must be made by the defendant to justify the inspection, but it is sufficient if it be shown that " there is reason to believe that the evidence before the grand jury is insufficient or illegal." (See *People ex rel. Lemon* v. *Supreme Court,* 245 N. Y. 24, 31.) Moreover, the court would seem to have the power, in the exercise of its own prerogative, to examine the Grand Jury minutes itself in a proper case in order to enable it to pass upon a motion to dismiss the indictment. (Cf. *United States* v. *Perlman,* 247 F. 158, 161.)

The showing made by the defendant at the trial that the principal evidence on which the People relied was not available to the Grand Jury, and that the only evidence on which the indictment could have been found consisted of circumstantial proof which was at least of doubtful sufficiency, was certainly adequate to justify the granting of an inspection, or at least an examination of the minutes by the court itself. Since the Grand Jury minutes have been made available to us on this appeal, we may certainly do what the trial court should have done, and determine the motion to dismiss on the basis of such minutes.

The fundamental rights here involved have been the subject of frequent judicial exposition. " The grand jury is the great inquest between the government and the citizen. It is of the highest importance, that this institution be preserved in its purity, and that no citizen be tried, until he has been regularly accused by the proper tribunal." (*United States* v. *Coolidge,*

Fed. Cas. No. 14,858.) In this State, no person may be held or tried upon a charge of felony except on indictment of a Grand Jury (N. Y. Const., art. I, § 6), and an indictment must be based upon evidence which in the judgment of the Grand Jury " would, if unexplained or uncontradicted, warrant a conviction by the trial jury." (Code Crim. Pro., § 258.)

When " it appears that an indictment is founded upon evidence which as matter of law is insufficient to warrant a conviction, the courts have power to set it aside." (*People* v. *Nitzberg*, 289 N. Y. 523, 526, *supra*; *People* v. *Sweeney*, 213 N. Y. 37, 42, *supra*.) " This power is based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives and to prevent oppression or persecution. It is a power which the legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional." (*People* v. *Glen*, 173 N. Y. 395, 400, *supra*.)

The courts have accordingly recognized the right of the defendant, independently of statutory authorization, to challenge the sufficiency of evidence before the Grand Jury by motion to dismiss the indictment prior to the entry of judgment of conviction. (*People* v. *Glen, supra,* p. 400; *People* v. *Sexton,* 187 N. Y. 495, 511–512, *supra*; *People* v. *Nitzberg, supra,* p. 529; *People* v. *Eckert,* 2 N Y 2d 126.) Upon such a challenge, the indictment must, of course, stand or fall without regard to any additional evidence that may be presented at the trial. (*People* v. *Nitzberg, supra*; *People* v. *Sweeney, supra,* p. 45; *People* v. *Van Allen,* 275 App. Div. 181.)

The guiding standards were just recently restated by the Court of Appeals in *People* v. *Eckert* (*supra,* p. 129): " Of course, an indictment which is based upon circumstantial evidence which does not possess the degree of certitude which the law requires as to those facts bearing upon the accused's guilt must be dismissed (*People* v. *Lewis,* 275 N. Y. 33). The legal sufficiency of such evidence is measured by two standards: the facts from which the inferences of the accused's guilt are drawn must be satisfactorily established; and they must not only be inconsistent with innocence, but must exclude to a moral certainty every other reasonable hypothesis but guilt. (*People* v. *Harris* [136 N. Y. 423], *supra; People* v. *Razezicz,* 206 N. Y. 249; *People* v. *Lewis,* 275 N. Y. 33, *supra; People* v. *Bearden,* 290 N. Y. 478.) "

The evidence underlying the indictment in the *Eckert* case was held to be legally sufficient, and it was accordingly observed

that any issue as to credibility or weight of the evidence was a matter for the Grand Jury (*People* v. *Eckert, supra,* p. 129). The court, however, reaffirmed the basic principle that an indictment not founded on evidence sufficient as a matter of law to warrant a conviction must be dismissed.

A reading of the Grand Jury minutes in the instant case discloses that the evidence before that body against defendant Howell was for the most part circumstantial, insufficient as a matter of law, and therefore incapable of supporting the Grand Jury judgment of sufficiency that is implicit in voting the indictment. The substance of the evidence offered to connect Howell with the homicide was as follows: Howell was shown to have been in the vicinity of the deceased's home on several different days preceding the shooting, being in Ryan's company on one or more of such occasions. He was also seen in the neighborhood several hours before the shooting, and he was at the wheel of his wife's automobile across the park from the deceased's home, moving slowly in a northerly direction, at the time Ryan was being pursued by a police officer following the shooting. Ryan approached the car, put his hand on the front door and leaned forward, appearing to speak to Howell, and then turned and ran in the opposite direction. At that point, Ryan and the police officer exchanged pistol shots, and Howell sped away in the car. There was further evidence of abandonment of the car and flight by Howell, as well as of false statements made by him at the time of his surrender denying that he had been in The Bronx or in possession of his wife's car on the day of the homicide. No further evidence was adduced to implicate Howell in the commission of the homicide.

Circumstantial evidence is, of course, " not to be discredited simply because of its nature ". (*People* v. *Eckert, supra,* p. 129.) But to serve as the predicate for indictment or conviction, it must be such as directly and satisfactorily establishes " the facts from which the inferences are to be drawn ". Further, " the inferences may not be based upon conjecture, supposition, suggestion, speculation or upon other inferences: the conclusion sought must flow naturally from the proven facts and be consistent with them all: the proven facts must exclude to a moral certainty every hypothesis except that of guilt or of the offense charged and not alone must all the proven facts be consistent with and point to guilt, but they must be inconsistent with innocence ". (*People* v. *Weiss,* 290 N. Y. 160, 163; see, also, *People* v. *Eckert, supra,* p. 129; *People* v. *Harris,* 306 N. Y. 345, 351; *People* v. *Bearden,* 290 N. Y. 478; *People* v. *Razezicz,* 206 N. Y.

249.) While " this does not mean that absolute or metaphysical certainty is required * * * The issue is: does the evidence logically point to the defendant's guilt, and exclude, to a moral certainty, every other reasonable hypothesis (see *People v. Harris*, 306 N. Y. 345, 351)." (*People v. Eckert, supra,* p. 129.)

Under these criteria, the foregoing evidence was, to my mind, clearly insufficient as a matter of law to warrant Howell's indictment or conviction for the crime of murder or for any degree of homicide that might properly be submitted to a jury. Totally lacking was any proof, as distinguished from suspicion or surmise, from which an inference might reasonably be drawn, to the exclusion of all other inferences, that Howell had acted in concert with Ryan in the commission of the homicide. We may assume that the evidence before the Grand Jury was adequate to warrant the inference that Howell was waiting for Ryan by prearrangement near the scene of the slaying, and perhaps even that he accompanied Ryan to the neighborhood. But such evidence of Howell's presence at or near the scene of the crime or of his prior association with Ryan does not " lead to any inference to the exclusion of all others " that he was collaborating with Ryan in the perpetration of the killing. (Cf. *People v. Weiss, supra,* p. 170; *People v. Ligouri,* 284 N. Y. 309, 318; *People v. Kress,* 284 N. Y. 452, 460; *People v. Cilento,* 2 N Y 2d 55, 63.)

There was thus no proof, direct or circumstantial, that Howell knew or had reason to know that Ryan was armed or that he was going to shoot Lewis, or that he was acting in concert with Ryan to commit the crime of murder, or for that matter, any crime. The evidence before the Grand Jury manifestly did not exclude to a moral certainty the hypothesis of innocence, and at the most gave rise merely to suspicion which cannot, however, take the place of evidence.

The evidence of flight and of the false statements made by Howell likewise did not serve to " ' exclude to a moral certainty every hypothesis except that of guilt ' " of the crime charged. (Cf. *People v. Leyra,* 1 N Y 2d 199, 210.) The Court of Appeals made the following observation in the *Leyra* case (*supra,* pp. 209–210): " And our court has held that evidence of fabrication or other evasive conduct may ' not serve as a substitute for other proof ' (*People v. Giordano, supra,* 213 N. Y. 575, 583), that ' " it operates ordinarily *only by way of lending strength to other and more tangible evidence*." (*People v. Nowakowski,* 221 App. Div. 521, 523; and see *Commonwealth v. Webster,* 5 Cush. 295, 317) '. (*People v. May, supra,* 290 N. Y. 369, 373.) "

Here, as in the *Leyra* case, there is no " other and more tangible evidence ", but only the evidence noted above, which would in no way warrant any inference of the defendant's guilt.

Since the indictment was thus " founded upon evidence which as matter of law is insufficient to warrant a conviction " (*People* v. *Nitzberg,* 289 N. Y. 523, 526, *supra*), the judgment of conviction should be reversed and the indictment dismissed.

RABIN and FRANK, JJ., concur with BREITEL, J. P.; BOTEIN, J., concurs in the result in opinion; VALENTE, J., dissents and votes to reverse and dismiss the indictment in opinion.

Judgment affirmed.