UNITED STATES, Appellee

v

FREDDIE L. BUCHANA, Private First Class,
U. S. Army, Appellant

19 USCMA 394, 41 CMR 394

No. 22,578

April 24, 1970

*Captain Robert A. Savill* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Lee A. Rau.*

*Captain John C. Lenahan* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

Despite the appellant's pleas of not guilty, a general court-martial convicted him of robbery and assault with intent to commit robbery. The convening authority approved the court-martial's sentence of a dishonorable discharge, total forfeitures, confinement at hard labor for two years, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the approved findings and sentence. This Court granted the appellant's petition on the issue of:

"Whether the law officer erred to the prejudice of the accused by instructing the court-martial:

'Now, this evidence [*i.e.,* fleeing the scene] would give rise to the fact, would give rise to the inference, that there was a concert of action and a purpose to commit the offense of robbery.' "

At about 7:00 p.m. on the evening of February 5, 1969, the appellant went to the Enlisted Men's Club at Fort Gordon, Georgia, to think about personal problems. Two other soldiers, Hill and Arrington, joined him later. Before the Club closed the appellant drank about eleven beers and three mixed drinks. After the Club closed this group of three Negroes started to walk toward their barracks. Two Caucasian soldiers named Jordan and Youngblood preceded them as the two groups headed down an alley between two buildings. Both groups passed a parked automobile in which sat persons working with the Military Police and the Criminal Investigations Detachment in trying to stop muggings that had occurred at Fort Gordon. At a distance from the car estimated variously at 30 to 75 feet, Arrington attacked Jordan and Hill attacked Youngblood. When Youngblood broke Hill's grasp, the appellant, who had been standing to the side, approached Youngblood with a clenched fist. Youngblood stabbed the appellant with a knife he withdrew from his pocket after falling to the ground following Hill's attack on him. According to Youngblood the appellant never hit him. Jordan testified that during the assaults his wallet was removed

**395**

and Youngblood believed an attempt was made to remove his.

Both Arrington and the appellant contend that the attacks followed Jordan's having referred to their race in terms they considered offensive. The appellant stated that he intended to help Hill when he saw Youngblood break Hill's grasp but that his purpose was to prevent his friend from being beaten up in what he thought was a simple fight not involving robbery. Youngblood himself testified that it appeared to him that the appellant "was going on about his business" when the attacks began and only later did the appellant come to the assistance of his companions. The evidence is that the alleged removal of Jordan's wallet and the attempted removal of Youngblood's wallet had already occurred by the time the appellant tried to help Hill. Arrington asserted that if his group had intended a robbery they hardly would have attempted it so close to an occupied automobile when there was a much more secluded area they soon would have reached.

For the appellant to be held criminally liable as a principal he must have shared with the perpetrators the criminal intent and purpose requisite to the offenses involved. United States v McCarthy, 11 USCMA 758, 29 CMR 574 (1960); United States v Jackson, 6 USCMA 193, 19 CMR 319 (1955). Although the appellant clearly assaulted Youngblood, evidence that the appellant knew robbery was involved or that there was a preconceived plan to assault the victims is extremely scanty.

In his instructions on the specific intent to rob, the law officer summarized the circumstantial evidence. In doing so he included this statement:

". . . As soon as these acts occurred, the three Negroes, including the accused, immediately ran from the scene. Now, this evidence would give rise to the fact, would give rise to the inference, that there was a concert of action and a purpose to commit the offense of robbery."

Appellate defense counsel assailed this part of the instructions on the grounds that: (1) The evidence of flight lacked sufficient probative value to merit an instruction; (2) it misstates the law by omitting that the flight must be unexplained and by extending the inferences beyond a consciousness of guilt to a specific intent; (3) it invades the province of the jury by concluding that the evidence had the legal significance of flight and by dictating inference to be drawn; and (4) it is not tailored to the evidence of explanation or to contemporary psychological knowledge and it is not restricted to the lesser included offense of assault.

At other points in the entire instruction, the law officer outlined to the court *inter alia* that: (1) They must be satisfied beyond a reasonable doubt that the appellant was guilty of all of the elements, including the animus to rob; (2) the appellant might have had a state of mind less culpable than that of the perpetrators; (3) Arrington and Hill may have had an intent to commit robbery that was not necessarily shared by the appellant; (4) if they were not satisfied beyond a reasonable doubt that the appellant specifically intended to commit robbery but they were satisfied beyond a reasonable doubt that he was guilty of assault and battery, they could find him guilty of only such lesser included offense; (5) the existence of some evidence, direct or circumstantial, or both, tending to establish an essential element of an offense does not preclude the existence of a reasonable doubt with respect to that element; (6) the weight they gave to an accused's intent depended on the circumstances attending the facts that gave rise to the inference; and (7) they were not required to give any weight to or draw any inference.

This Court's decisions require a law officer (now the military judge, to submit the theories of both parties to the court-martial and to provide

"lucid guideposts" to enable the court members to apply the law to the facts. United States v Bairos, 18 USCMA 15, 39 CMR 15 (1968); United States v Sheeks, 16 USCMA 430, 37 CMR 50 (1966); United States v Smith, 13 USCMA 471, 33 CMR 3 (1963). In reviewing the propriety of the instructions given, appellate tribunals should review them in their entirety rather than piecemeal. United States v Houghton, 13 USCMA 3, 32 CMR 3 (1962); United States v Miller, 8 USCMA 33, 23 CMR 257 (1957).

Evidence of flight is admissible to establish an accused's guilt of the offense charged. United States v Harris, 6 USCMA 736, 21 CMR 58 (1956); United States v Kachougian, 7 USCMA 150, 21 CMR 276 (1956); United States v Heitner, 149 F2d 105 (CA2d Cir) (1945); McFarland v United States, 273 F2d 417 (CA5th Cir) (1960); Wigmore, Evidence, 3d ed, § 276; and 1 Wharton, Criminal Evidence, 12th ed, § 139. While evidence of flight does not give rise to a presumption of guilt, it is "a circumstance which when considered together with all the facts of the case may justify the *inference* of the accused's guilt." (Emphasis supplied.) Wharton, supra, at page 262; Wigmore, supra, at pages 112–113; footnote 3, at pages 115–116; §§ 2490, 2491. Consequently, we have no difficulty in agreeing that if the appellant fled the scene of the encounter this action would support an inference of his guilt of *some* offense. We believe, however, that this inference of guilt could be drawn for his offense of assault upon Youngblood as easily as it could be drawn for his acting in concert with others in the commission of robbery or attempted robbery. Flight is merely a circumstance tending to establish a consciousness of guilt in the person fleeing. Allen v United States, 164 US 492, 41 L Ed 528, 17 S Ct 154 (1896).

In Hickory v United States, 160 US 408, 417, 40 L Ed 474, 16 S Ct 327 (1896), the Court said of flight:

" 'There are so many reasons for such conduct, consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt, but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon surrounding circumstances.' "

See also People v Jones, 1 Mich App 633, 137 NW2d 748 (1965); People v Howell, 3 AD2d 153, 158 NYS2d 985 (1957); People v Lofton, 64 Ill App 2d 238, 212 NE2d 705 (1965); Martin v State, 98 Ga App 136, 105 SE2d 250 (1958).

The law officer, therefore, erroneously extended the principle in this case when he advised the court that fleeing the scene gives rise to the inference that there was a concert of action and a purpose to commit the offense of robbery. Though he later informed the court that the weight to be accorded the inference depended upon attendant circumstances, undue emphasis upon one fact may result in the exclusion of all others on inferring intent. United States v Soccio, 8 USCMA 477, 24 CMR 287 (1957); United States v Alston, 8 USCMA 490, 24 CMR 300 (1957). It would also be extending the rule to a great length to hold that the flight of one person under these circumstances tends to establish the guilt of another. State v Gaines, 260 NC 228, 132 SE2d 485 (1963); 29 Am Jur 2d, Evidence, § 283, and cases there cited.

Although the law officer said he would instruct on proof of intent by circumstantial evidence, he did not mention that flight would be part of his instruction, and there was no specific reference to an instruction about the inference to be drawn from flight. After the law officer had instructed the court, he asked: "At this time, I will ask counsel for either side if you have any objection to the instructions I have given or request that I single

out any additional matters?" The trial defense counsel replied in the negative. If any clarification or elaboration is required on instructions, the burden of requesting additional instructions or complaining about the ones given rests with the defense counsel. United States v Miller, supra; United States v Phillips, 3 USCMA 137, 11 CMR 137 (1953); and United States v Felton, 2 USCMA 630, 10 CMR 128 (1953). In this instance, though, we agree with appellate defense counsel that unlike an appeal to the passions of court members, the logical inference of evidence does not depend upon the atmosphere of the trial and that generally a more subtle analysis is required to judge the potential prejudicial impact of an erroneous instruction on inference upon the triers of fact. For this reason, the failure of the trial defense counsel to object promptly at trial is less significant here than in the case of an inflammatory argument since with the instructions on inferences the prejudice may not occur until the court-martial has retired to deliberate on findings. Regardless, "[w]e will not hold waiver where the issue concerns an essential element of the offense." United States v Gilbert, 16 USCMA 446, 448, 37 CMR 66 (1966).

Accordingly, the decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered or the Court of Military Review may reassess a sentence based only on the offense of assault that was admitted in court.

Chief Judge QUINN and Judge FERGUSON concur.