# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

No. 201700119

_____

**UNITED STATES OF AMERICA**
*Appellee*

v.

**Darin H. KEETER**
Lieutenant Commander (O-4), U.S. Navy
*Appellant*

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain David Harrison, JAGC, USN.
For Appellant: Lieutenant Commander William L. Geraty,
JAGC, USN.
For Appellee: Captain Brian L. Farrell, USMC;
Major Kelli A. O'Neil, USMC.

_____

Decided 3 October 2018

_____

Before FULTON, CRISFIELD, and, HITESMAN *Appellate Military Judges*

_____

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

FULTON, Senior Judge:

At a general court-martial, a panel of officers convicted the appellant, contrary to his pleas, of one specification of attempted sexual assault of a child, two specifications of attempted sexual abuse of a child, and one specification of solicitation to produce and distribute child pornography, in

violation of Articles 80 and 134, Uniform Code of Military Justice, (UCMJ).[1] The members sentenced the appellant to three years' confinement and a dismissal. The convening authority approved the sentence as adjudged and, except for the dismissal, ordered the sentence executed.

In five assignments of error, the appellant contends: (1) the evidence is factually and legally insufficient to prove that he intended to engage in sexual intercourse with a person who had not yet attained the age of 16 years; (2) the military judge gave erroneous instructions; (3) he was denied effective assistance of counsel; (4) the military judge abused his discretion by admitting testimony that he previously ruled was not relevant; and (5) the assistant trial counsel committed prosecutorial misconduct through improper argument.

After careful consideration of the record of trial and the parties' pleadings, we are satisfied that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred.[2]

## I. BACKGROUND

As part of a Naval Criminal Investigative Service (NCIS) undercover operation targeting would-be child sex abusers, Master-at-Arms Third Class (MA3) R posted a personal ad on Craigslist. In the ad, MA3 R—who was in fact an adult female on active duty in the United States Navy–posted a picture of herself at age 14 or 15, but listed her age as 89. The appellant responded to the ad, and the two started exchanging text messages.

Early in the message exchange, "Cris" (as MA3 R called her persona in the ad) stated that she was a military dependent who was almost 15 years old and homeschooled by her single mother, who also had a full-time job. Over the next few days, MA3 R maintained her young persona as the messages became overtly sexual, culminating with the appellant sending naked pictures of himself and messages encouraging Cris to masturbate. The appellant agreed to drive to Cris's home to meet her at a time when Cris had assured the appellant that her mother would be absent. NCIS apprehended the appellant when he arrived at the agreed-upon location.

We will address the remaining relevant facts in the discussion.

---

[1] 10 U.S.C. §§ 880, 934 (2016).

[2] Arts. 59(a) and 66(c), UCMJ.

## II. DISCUSSION

### A. Legal and factual sufficiency

Although the appellant does not contest the underlying acts that form the basis of the charges, he argues that they are legally and factually insufficient. First, the appellant argues that no reasonable finder of fact could have concluded that the appellant, having seen the five photographs he received from MA3 R, would have thought that MA3 R was under 16. Second, the appellant avers that the evidence at trial only established "a generalized desire for libidinous gratification" and that "[i]t is not a fair inference based on the evidence to summarily conclude that a person's desire for some type of sexual gratification necessarily implies a specific desire to engage in sexual intercourse."[3] We disagree.

We review questions of legal and factual sufficiency *de novo*.[4] The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[5] In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."[6]

The test for factual sufficiency is whether, "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt."[7] In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[8] We may "judge the credibility of witnesses, and

---

[3] Appellant's Brief of 5 Sep 2017 at 16.

[4] Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[5] *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).

[6] *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

[7] *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006), *aff'd* 64 M.J. 348 (C.A.A.F. 2007) (citations omitted).

[8] *Washington*, 57 M.J. at 399.

determine controverted questions of fact," and substitute our judgment for that of the fact finder.[9] While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict.[10]

The government introduced 176 pages of text messages between the appellant and MA3 R playing the role of Cris.[11] She sent several pictures of herself to the appellant. In addition to the picture of her at age 14 or 15 contained in her initial ad,[12] she sent the appellant pictures of herself at ages 21,[13] 16,[14] and 14.[15] On several occasions "Cris" tells the appellant that she is only 14:

> Im [sic] almost 15.[16]

> Im [sic] almost 15 and mature.[17]

> 1.5 years more thenn [sic] I can drive on base.[18]

> So you just want a 14 year old friend???lol.[19]

The appellant's defense at trial was that he believed Cris was a "stay-at-home spouse who was bored and wanting to chat."[20] The appellant claimed that he initially assumed that the "89" in the personal ad was a reference to Cris's birth year and that along with the pictures of MA3 R at 21 and 16 years old caused him to believe Cris was a 20-year-old spouse roleplaying as a

---

[9] Art 66(c), UCMJ; *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990).

[10] *Rankin*, 63 M.J. at 557.

[11] Prosecution Exhibit (PE) 3.

[12] PE 1.

[13] Record at 312; PE 3 at 73.

[14] Record at 321; PE 3 at 90.

[15] Record at 258; PE 3 at 114.

[16] PE 3 at 2.

[17] *Id.* at 15.

[18] *Id.* at 36.

[19] *Id.* at 80.

[20] Record at 391.

14-year-old dependent.[21] The appellant admitted that the "flirtatious banter back and forth"[22] eventually escalated to the appellant "sexting" and sending nude pictures of himself to Cris because "[he] believe[d] that is what she wanted to get from [him]."[23]

Our independent consideration of the record of trial in this case leads us to conclude that the members could reasonably have inferred that the appellant believed that "Cris" was a person who had not attained the age of 16 years old. The members could have reasonably concluded that the appellant's account was implausible. MA3 R, in her role as Cris, was consistent in her insistence that she was 14. The appellant conceded on cross examination that Cris never once suggested her age was anything other than 14, or that she had a husband. The appellant also admitted that he never confirmed that Cris was an adult. In one text message, Cris wrote, "I mean you are older dont [sic] want trouble for me or you lol." A few message exchanges later, the appellant stated that he had first thought that Cris must have been older saying: "Figured you were early 20s" and "[a]fter all what teen would be posting on [Craigslist]." Cris responded, "Me lol" and "i [sic] meant im [sic] the teen that would post lol." The appellant also asked Cris about her sexual experience, and told her how to masturbate. The questions and answers were consistent with the appellant holding a subjective belief that he was corresponding with a 14-year-old girl.

The appellant also claims the evidence was both factually and legally insufficient to prove any intent to engage in sexual intercourse with Cris when he went to her home. His testimony at trial was that his intent was to meet Cris and see who she was and go grab a bite to eat.[24] The appellant asserts that the lack of any explicit mention of intercourse in any text messages, and the fact he had no condoms in his possession when he was apprehended, demonstrates that he had no intent to engage in sexual intercourse with Cris when he arrived at her home. But the evidence—including the appellant's testimony on cross-examination—supports the members' conclusion that the appellant intended to have sex with Cris. The appellant's texts refer to his desire to have a "friends with benefits" relationship with Cris.[25] On cross-

---

[21] *Id.* at 406.

[22] *Id.* at 413.

[23] *Id.* at 419.

[24] *Id.* at 425.

[25] PE 3 at 77.

examination, the appellant admitted that one "benefit" was sex.[26] The sexual content of the text-message conversation between the appellant and Cris escalated quickly over just a few days. When he had determined that Cris's mother would be away, he arranged to visit her. Although he denied that he believed he was talking to a child, he admitted on cross-examination that intercourse with Cris was "possible" when they met.[27] Members could reasonably infer from this evidence that the appellant intended to engage in sexual intercourse with Cris.

After carefully reviewing the record of trial and considering all of the evidence in a light most favorable to the prosecution, we are convinced that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt to support the findings of guilt in this case. Additionally, after weighing all the evidence presented at trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt.

## B. Instructional Error

The appellant alleges that the military judge's instructions represented plain error because they are "inaccurate, incomplete, inconsistent, and confusing."[28]

Specifically, the appellant argues that the military judge's failure to tailor the instructions resulted in their misstating the mens rea for attempt; that they included a confusing and irrelevant instruction on mistake of fact, and that the instructions contradict themselves regarding the definition of *minor*, as the term is used in this case.

Proper instructions to the members are a question of law we review *de novo*.[29] We evaluate a military judge's instructions "in the context of the overall message conveyed" to the members.[30] When, as here, the appellant "fails to preserve the instructional error by an adequate objection or request,

---

[26] Record at 445.

[27] *Id.* at 426.

[28] Appellant's Brief of 5 Sep 2017 at 19-21.

[29] *United States v. Payne*, 73 M.J. 19, 22 (C.A.A.F. 2014).

[30] *See United States v. Prather*, 69 M.J. 338, 344 (C.A.A.F. 2011) (internal quotation marks omitted) (quoting *Humanik v. Beyer*, 871 F.2d 432, 441 (3d Cir. 1989)).

we test for plain error."[31] "Under a plain error analysis, the accused has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused."[32] In the context of instructional plain error, the third prong is satisfied if the appellant shows a reasonable probability that, but for the error claimed, the outcome of the proceeding would have been different.[33] While the military judge has wide discretion in crafting instructions, he or she must provide an accurate, complete, and intelligible statement of the law.[34] Instructions should be tailored to fit the circumstances of the case and provide "lucid guideposts" to enable the court members to apply the law to the facts.[35]

### 1. Inadequate tailoring of the instructions

The appellant was charged with attempting to sexually assault and sexually abuse a child under the age of sixteen. The military judge instructed the members on the elements of attempt, in violation of Article 80, UCMJ, as well as the elements of the target offenses, as contained in Article 120b, UCMJ. In connection with the target offenses, the military judge, using the Military Judge's Benchbook's proposed instruction, told the members that "'Child' means any person who has not attained the age of 16 years. The prosecution is not required to prove the accused knew that Cris had not attained the age of 16 years at the time the alleged sex act occurred."[36] Although this is a correct statement of law with respect to the target offense, the appellant argues that the military judge should have tailored the instructions by omitting the part of the instruction informing members that the government did not have to prove that the appellant "knew that Cris had not attained the age of 16 years." He points out, correctly, that a person is not guilty of an attempt unless he intends every element of the target offense.

---

[31] *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017).

[32] *Id.* at 230 (quoting *Payne*, 73 M.J. at 23).

[33] *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017)

[34] *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012).

[35] *United States v. Buchana*, 41 C.M.R. 394, 396-97 (C.M.A. 1970) (citations omitted); *see also United States v. Killion*, 75 M.J. 209, 211 (C.A.A.F. 2016) (a military judge's instructions must be sufficient to provide necessary guideposts for an informed deliberation on the guilt or innocence of the accused).

[36] Record at 484-85. *See also* Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9, para 3-45b-2, Note 3 (10 Sep 2014).

Informing the members that under Article 120b, UCMJ, the prosecution was not required to prove that the appellant knew that Cris was under 16 was plain error, according to the appellant, because it tended to excuse the government from having to prove that the appellant specifically intended to sexually assault or abuse a child under 16.

We have considered the instructions in their entirety, and we do not agree that the military judge's failure to *sua sponte* tailor the standard instruction constituted plain error. The military judge correctly explained the elements of Article 80, UCMJ, to the members. He informed them that the government was required to prove that the appellant "believed [Cris] had attained the age of 12 but had not attained the age of 16 years" in order to convict him of attempt.[37] Then, as part of a defense-requested mistake-of-fact instruction, the military judge returned to the matter of what the appellant must have believed in order to be guilty:

> I advised you earlier that to find the accused guilty of the offenses of attempted sexual assault of a child and attempted sexual abuse of a child, you must find beyond a reasonable doubt that the accused had the specific intent to commit a sexual act . . . with a person he believed had not attained the age of 16 and that the accused had the specific intent to commit a lewd act, to wit, intentionally exposing his genitalia to a person who he believed had not attained the age of 16 . . . [.][38]

The complained of instruction, while perhaps surplusage, does not contradict the military judge's repeated and correct description of the government's burden to prove that the appellant *believed* that Cris was under 16. Of course the government was not required to prove that the appellant *knew* that Cris was under 16; Cris was the persona of an adult law enforcement agent. While we agree that the instruction might have been made more clear by tailoring it in the way the appellant now suggests, or by giving the optional Benchbook instruction on factual impossibility in the context of attempts,[39] the military judge's instruction did not constitute plain or obvious error.

---

[37] Record at 481.

[38] *Id.* at 495.

[39] *See* Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9, para 3-4-1, Note 4 (10 Sep 2014).

Even had the complained of instruction constituted plain or obvious error, we are convinced beyond a reasonable doubt that it did not contribute to the verdict. The main issue before the members was clear. The appellant had been corresponding with a person who claimed to be a 14-year-old girl. The appellant claimed that he knew he was talking to an adult. Both parties' theories of the case were organized around this question. The military judge correctly described the elements of the offenses and allocated the burden of proof to the government several times during his instructions. None of this was directly contradicted by the instruction in question, which was not relevant to the facts in this case. We find this assignment of error to be without merit.

### 2. Erroneous inclusion of a mistake of fact instruction

In accordance with the civilian defense counsel's (CDC's) request, the military judge instructed the members on the defense of mistake of fact. The facts of this case do not suggest that the appellant had a mistake of fact defense available to him. But, as the appellant notes in his brief, the invited error doctrine poses an obstacle to our consideration of this purported error. The appellant's CDC asked the military judge to give a mistake of fact instruction and did not object to the particular instruction the military judge agreed to give. Invited error does not provide a basis for relief.[40]

### 3. Inconsistent definitions of term minor

The appellant asserts that the military judge committed plain error by providing conflicting instructions relating to Cris's age. In the sole specification under Charge II, soliciting the creation and distribution of child pornography in violation of Article 134, UCMJ, the government alleged that the appellant solicited a person he believed to be under 16 years old. The military judge's instruction on the elements of the offense was consistent with the specification: in order to convict the appellant the members needed to find that he wrongfully solicited an individual who he did not believe had attained the age of 16 years. But when the military judge defined the term *minor* for the members, he used the definition in the Manual for Courts-Martial: a person under the age of 18.[41] The appellant alleges that the military judge's instructions are plain error because they might have permitted the members to convict the appellant even if he thought that Cris was 16 or 17.

---

[40] *United States v. Martin*, 75 M.J. 321, 325 (C.A.A.F. 2016); *United States v. Harvey*, 67 M.J. 758, 763-64 (A.F. Ct. Crim. App. 2009) (defense-requested omission of *Marcum* factors from military judge's instructions does not provide basis for relief).

[41] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), Part IV, ¶ 68b.c.4.

We find that the instructions were not error, let alone plain error. The military judge instructed the members consistently with the specification, and gave the definitions found in the Manual. Had the members thought that the appellant found he was corresponding with a 16- or 17-year-old, they could have indicated this finding through exceptions and substitutions. But there is no evidence in the record to suggest that the appellant thought he was dealing with a 16- or 17-year-old. The appellant insisted he thought we was corresponding with a woman in her twenties, and Cris identified herself as a 14-year-old. The instructions complained of here were correct and did not prejudice the appellant. This assignment of error is without merit.

## C. Ineffective assistance of counsel

The appellant claims his CDC was ineffective because he requested the mistake of fact instruction discussed above. Though requesting the instruction was error, we do not find that counsel was ineffective.

The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms."[42] In assessing an appellant's claim that his counsel was ineffective, appellate courts apply the two-pronged test announced in *Strickland v. Washington*. In order to prevail, an appellant must demonstrate that his counsel's errors were so serious that the appellant's lawyer "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment. Second, [he] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[43] We review performance and prejudice *de novo*.[44]

We need not decide in this case whether CDC's decision to request a mistake of fact instruction was an error of such magnitude that it satisfies *Strickland*'s first prong. We find that the appellant has not demonstrated a reasonable probability that the result of the trial would have been different without the instruction. The instruction was superfluous in this case, and did not relate to either side's version of the facts. But the members were properly

---

[42] *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See also United States v. Knight*, 53 M.J. 340, 342 (C.A.A.F. 2000) (citing *United States v. Palenius*, 2 M.J. 86 (C.M.A. 1977)).

[43] *Strickland*, 466 U.S. at 687.

[44] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

instructed as to the elements of the offenses and the correct burden of proof. The addition of a superfluous instruction does not cause us to believe that the members did not understand the real issue before them: if the appellant knew he was talking to an adult, he was not guilty of attempting to commit offenses against a child. We are confident, based on the totality of the instructions, that the members grasped this question and were able to properly apply the facts to the law. This assignment of error is without merit.

## D. Testimony pertaining to the NCIS undercover operation

The appellant alleges that the military judge abused his discretion by permitting testimony and argument about how people other than the appellant tended to react to the undercover agent in this particular operation. During the government's case in chief, a supervisory NCIS agent offered testimony that only a small percentage of subjects continue to engage with the undercover agent after the agent tells the subject that she is underage. The military judge sustained the objection, but warned the CDC that cross-examination might open the door to this testimony later.

The government's next witness was MA3 R, who had played the role of Cris. The defense cross-examined MA3 R. One of the themes in the defense's cross-examination was the contention that MA3 R continued to interact with the appellant even though he had not engaged in sexually explicit conversation after three days. The CDC contended that MA3 R—and not the appellant—had been the one to introduce sexual themes into the exchange. The CDC asked MA3 R what guidance she had been given about when to end a conversation, and asked if NCIS had a standard operating procedure that guided that decision. MA3 R testified that she had no written guidance. But she stated that she would end a conversation when a subject took an "exit ramp"—described as an age reminder or just "an opportunity [for the subject of the investigation] to think about what's happening."[45] MA3 R insisted that it would have been premature to end the conversation with the appellant, and that he—not she—had escalated the conversation. MA3 R testified that she might, depending on the situation, let a conversation go for months without terminating it, even if it had not turned sexual.

On redirect, the assistant trial counsel asked MA3 R how many people who responded to the Craigslist ad stopped responding. MA3 R replied, "Approximately 90 percent."[46] The assistant trial counsel asked if people who

---

[45] Record at 252.

[46] *Id.* at 335.

stopped responding were investigated, and MA3 R replied that they were not. The CDC did not object to either of these questions or answers.

The appellant claims that the admission of this evidence was error, and that the appellant's objection to similar testimony from MA3 R's supervisory agent preserved the error for our consideration. The government argues that the appellant opened the door to the testimony and, alternatively, that any objection was waived. We find that the objection to testimony from a previous witness preserved the issue, and we will test for plain error.

Again, plain error requires that the appellant demonstrate that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right to the accused.[47] We find that this testimony was made marginally relevant by the CDC's cross-examination of MA3 R, and that its admission in the absence of an objection at the time was not a plain or obvious error. The CDC's cross-examination of MA3 R laid the groundwork for the appellant's critique of the NCIS investigation. Part of that critique was the CDC's assessment that the NCIS operation was flawed. The NCIS operation, according to the CDC, was constructed in such a way that it would have resulted in a bycatch of innocent service members uninterested in sexual offenses involving children.

The assistant trial counsel addressed the conduct of the NCIS operation through the re-direct examination of MA3 R, including the question about how many other people broke off contact with MA3 R, and whether those people were investigated further. These questions and their answers are related to the issues raised by the CDC in his cross-examination. At a minimum, their admission is not plain or obvious error, and we decline to grant relief on the basis of this testimony.

## E. Argument pertaining to the NCIS undercover operation

The appellant further complains that the portion of the assistant trial counsel's argument addressing this testimony was prosecutorial misconduct for two reasons: first, because the underlying testimony about most subjects breaking off contact with the investigator was itself error, and second, because the trial counsel misstated the evidence when he argued that these subjects broke off contact when they learned that Cris was 14. In this connection, the appellant correctly points out that MA3 R did not testify that the reason others disengaged with the investigator was because she told them that she was 14.

---

[47] *Davis*, 76 M.J. at 229.

"Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."[48] Improper argument is a type of prosecutorial misconduct.[49] We review allegations of prosecutorial misconduct in the form of improper argument *de novo*.[50] If proper objection is made, as was the case here, we review for prejudicial error.[51]

Having found that the unobjected to testimony about other subjects breaking off contact with investigators was properly admitted, we similarly find that it was not error for the trial counsel to refer to this evidence during argument. As for whether the assistant trial counsel misstated the evidence, the government contends, and we agree, that the trial counsel inferred that the reason other subjects broke off contact with the investigators was because the investigator claimed to be a child. Trial counsel did not state that this had been MA3 R's testimony. But it is reasonable to conclude and properly argue that learning that a correspondent is 14 years old would be a common reason for an adult to break off a text conversation. The assistant trial counsel did not err by drawing this inference.

Even if the argument was erroneous, we would find that the error did not prejudice the appellant's substantial rights. We evaluate potential prejudice by examining the severity of the misconduct, the measures adopted to cure the misconduct, and the weight of the evidence supporting the conviction.[52] Importantly, we view the assistant trial counsel's statements in the context of the whole argument, and the whole trial.[53]

The portion of the argument at issue here is very short, and was not part of a pattern of inappropriate argument or other misconduct. It was not an attack on the appellant or his counsel. Any impropriety was neither pervasive

---

[48] *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[49] *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017).

[50] *Id.*

[51] *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing Art. 59, UCMJ, 10 U.S.C. § 859 (2000)).

[52] *Id.* at 184.

[53] *See United States v. Yong*, 470 U.S. 1, 11 (1985).

nor severe.[54] Although the military judge did not take any specific curative measures, he did properly instruct the members that "arguments of counsel are not evidence in this case" and to "base the determination of the issues in this case on the evidence as you remember it and apply the law as I instruct you."[55] Following closing and rebuttal arguments, the military judge reiterated, "[o]nce again, argument by counsel is not evidence . . . [t]o the extent that any counsel may have vouched for or opined as to any witness's credibility or intent, you should disregard that"[56] and "[i]f the facts as you remember them differ in any way that counsel states the facts, it is your memory that controls."[57] The government's case was strong relative to the defense case. The basic facts of the text exchanges were undisputed; the question for members was the appellant's intent. After observing him testify, the members were satisfied that the appellant thought he was corresponding with a child and that he intended to have sexual intercourse with her when he drove to meet her.

Considering these factors—particularly the isolated and brief nature of the alleged prosecutorial misconduct—we would decline to grant relief even if we were convinced that the argument was erroneous.

### III. CONCLUSION

The findings and sentence as approved by the convening authority are affirmed.

Judges CRISFIELD and HITESMAN concur.

FOR THE COURT

RODGER A. DREW, JR.
Clerk of Court

---

[54] *Cf. Fletcher*, 62 M.J. at 185.

[55] Record at 498.

[56] *Id.* at 520.

[57] *Id.* at 521.